# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

CASE NO.

MANUEL PACK,

    Plaintiff,
v.

MAGDALENE IVANOVSKI and
GOLDEN HORN CONDOMINIUM
ASSOCIATION, INC., LAW OFFICE OF
JOSEPH PUSTIZZI, P.A.,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Manuel Pack, sues the Defendants, Maggie Ivanovski and Golden Horn Condominium Association, Inc., and states as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory relief, injunctive relief, damages, punitive damages and attorneys' fees and costs for Defendants' violations of The Federal Fair Housing Act, as amended, 42 U.S.C. §§3601-3631 ("FHAA"), violations of the Fair Debt Collections Practices Act 15 U.S.C. §§1681 ("FDCPA"), and for violations of the Florida Consumer Collections Practices Act F.S. §§559.55-559.785 ("FCCPA").

### JURISDICTION, VENUE AND PARTIES

1. This Court has original jurisdiction pursuant to 28 U.S.C . §§1331 and 1343 and 42 U.S.C. § 3613 for Plaintiffs claims arising under 42 U.S.C. § 3601 et seq. and under 15 U.S.C. §1681 and pendant jurisdiction over the related state law claim for violations of the FCCPA since it arises under the same case or controversy.

9

2. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside within the jurisdiction of this District and because the events giving rise to the claims occurred in this District.

3. Plaintiff, Manuel Pack, is *sui juris* and a resident of Broward County, Florida.

4. Defendant, Magdalene Ivanovski, is *sui juris* and a resident of Broward County, Florida.

5. Defendant, Golden Horn Condominium Association, Inc., is a Florida non-profit corporation whose principal address is located in Broward County, Florida.

6. Defendant, Law Office of Joseph Pustizzi, P.A., is a Florida corporation whose principal address is located in Broward County, Florida.

7. All conditions precedent to this action have occurred, been satisfied or are otherwise waived.

## COMMON ALLEGATIONS

8. Golden Horn is a residential condominium located in Broward County, Florida ("Condominium").

9. Golden Horn Condominium Association, Inc. is the not-for-profit corporation that operates and manages the affairs of the Condominium in accordance with its Declaration of Condominium, By Laws, Articles of Incorporation and Rules and Regulations as they are amended from time to time ("Governing Documents"). To take action, Golden Horn Condominium Association, Inc. acts through its board of directors, officers, and through actual, apparent, ostensible or other agents of the Association ("Agents"). Collectively, the Golden Horn Condominium Association and its Agents are referred to as the "Association". A copy of the Declaration of Condominium, Bylaws and Articles of Incorporation are attached as composite Exhibit A. A copy of the Amendments to the Declaration of Condominium and Amendments to Bylaws are attached respectively as composite Exhibits B and C.

10. Magdalene Ivanovski (the "President") is a director and president of the

Association.

11. The Law Office of Joseph Pustizzi, P.A. ("Attorney") is the attorney who collects consumer debts, directly and indirectly, for the Association including enforcement of suspensions against owners who failed to pay alleged monetary obligations to the Association.

12. The President and the Association are collectively known as the "Association Defendants."

13. Manuel Pack ("Mr. Pack") is the co-owner of unit 9B and 9C at the Condominium and a member of the Association since 2008. Mr. Pack has been a permanent resident at the Condominium since in or about June 2014.

14. Mr. Pack is a disabled individual with a record history of Parkinson's disease and spinal stenosis. His disability is obvious, readily apparent and known by the Association. Among other things Mr. Pack's disability substantially interferes with the following major life activities:

    a. Walking since he has Parkinson's shuffle causing him to drag his feet and making it difficult for him to walk with coordination, making him unable to walk long distances, making him unable to stand for long periods of time, requiring him to use walking aids from time to time including a sit down walker and occasional use of a wheelchair,

    b. Lifting since he cannot lift objects more than five or ten pounds;

    c. Working since he is unable to work full time, work a broad variety of jobs including jobs requiring physical activity, jobs requiring full time typing since he cannot type for more than two hours at a time due to back pain and since he has difficulty typing accurately due to hand tremors resulting from his Parkinson's disease;

    d. Sitting since he is unable to sit down in a broad variety of seats including dining room chairs and other seating found in various restaurants;

  e. Exercising since he is unable to perform a broad variety of exercise activity including aerobic exercises, walking, running or weight lifting;

  f. Bathing since he needs assistance to clean certain body areas; and

15. Apart from his symptoms, Mr. Pack has also been regarded by state and local governments as being a person with disability. Among other things, Mr. Pack receives disability parking benefits from the Florida Department of Highway Safety and Motor Vehicles due to his permanent disability. Mr. Pack also receives disability benefits from the Broward County Property Tax Appraiser in the form of reduced property taxes due to his permanent disability.

16. On April 3, 2018, Mr. Pack requested the Association modify the pool to install handicapped access to the Association pool based on his disability of Parkinson's syndrome and disability related to need to swim to slow the progression of his symptoms. At this time, the Association pool was undergoing renovation.

17. The Association did not respond to his April 3, 2018 request.

18. Instead, the Association suspended Mr. Pack from using the pool and other common elements and amenities of the Association on or about September 30, 2018 based on an alleged monetary obligation owed to the Association.

19. At the time the Association imposed the suspension, the Association knew the governing documents contained no provisions authorizing the Association to suspend Mr. Pack's right to use the Association pool.

20. At the time the Association imposed the suspension, the Association also knew that the governing documents contained no provisions incorporating subsequent amendments to the Condominium Act as it is amended from time to time to give the Association suspension subsequently created by the Condominium Act.

21. On or about March 3, 2019, the Association's Attorney sent Mr. Pack a letter notifying him that his right to use the pool was suspended. He was immediately demanded to discontinue use of the Association's pool until such time the suspension is

lifted and if he fails to comply, the Association would file for arbitration and demand attorneys' fees and costs against him.

22. At the time the March 3, 2019 notice was sent, the Attorney knew the governing documents contained no provisions authorizing the Association to suspend Mr. Pack's right to use the Association pool and no provisions authorizing it to file arbitration, to enforce its suspension and to demand attorneys' fees and costs against Mr. Pack relating to any enforcement of the suspension.

23. At the time the March 3, 2019 notice was sent, the Attorney also knew that the governing documents contained no provisions incorporating subsequent amendments to the Condominium Act as it is amended from time to time to give the Association suspension subsequently created by the Condominium Act.

24. In or about August 2019, the Association then changed the locks to the Association pool to prevent Mr. Pack from using it. After the Association changed the locks, the Association provided keys to the pool to the members of the Association but did not provide a key to the pool to Mr. Pack or his wife.

25. On and after September 2019, Mr. Pack made requests for the key but his request was ignored.

26. In or about November 2019, Mr. Pack made requests for the key to use the Association pool based on his Parkinson's syndrome and spinal stenosis and related need to swim to reduce his related symptoms. He requested only a copy of the pool key since he never received one once the locks were changed.

27. On or about November 27, 2019, the Association for the first time attempted to engage in the interactive process with Mr. Pack. The Association requested Mr. Pack verify his disability and disability related need to use the pool.

28. Mr. Pack complied providing multiple doctor's letters verifying his disability and disability related need to use the Association's swimming pool. He also provided links to other website publications concerning Parkinson's syndrome and the benefits of

swimming.

29. After Mr. Pack complied, the Association did not request any further verification and stated it would make its decision to grant the request at a Board meeting more than a month later further delaying the approval of his request for a pool key.

30. On January 4, 2020, the Association finally met at an open Board Meeting to decide Mr. Pack's request. At the Board Meeting, the President announced that, since Mr. Pack was entitled to take a Medicare bus he should take the bus to a pool outside of the Condominium used by disabled persons and Medicare recipients. The Association thereafter decided that the Association will retrofit the pool to ADA requirements and make Mr. Pack pay for the unrequested modifications. Mr. Pack spoke at the Board Meeting after the decision was announced and again requested only a pool key so he could use the swimming pool and said he would not pay for the modification and was not requesting them. But the Association Defendants ignored him and never approved his request for the pool key.

31. On January 7, 2020, Mr. Pack emailed the Defendants to again plead to the Board that his request was only for a pool key and that he did not want the Board's unrequested ADA modifications forced on him that the Association stated he would be required to pay for.

32. After he emailed the Association's Board, that same night at 9:00 p.m. at night, Mr. Pack received notice from the President in person. The President knocked on his door with another director present. Mr. Pack's wife answered. The President asked if Mr. Pack was available. When Mr. Pack came to the door, the President delivered a notice to him and told the other director that "this is how process is served." The notice stated that the Association will be hiring an engineer to retrofit the pool to meet ADA requirements, a request Mr. Pack had never made nor needed. No key was provided.

33. The notice and message was made for the purpose to embarrass, humiliate, intimidate, threaten, shock and distress Mr. Pack. The notice of forced placed

14

modifications that Mr. Pack would be required to pay for was also in furtherance of a pattern of abusive behavior by the Defendants to impose and continue to impose unlawful monetary obligations on Mr. Pack and his wife.

34. On or about January 22, 2020, the Association provided Mr. Pack with a notice that they will not provide the unrequested modification to retrofit the pool since Mr. Pack would not agree to pay for them. The Association offered no alternative accommodations, and still fails and refuses to grant the requested accommodation of providing the pool key.

35. To date, Mr. Pack has been unable to use the Association's pool in the same manner non-disabled residents have been able to use and enjoy.

36. To date, the Defendants have created and continue to maintain a hostile environment that harasses and bullies Mr. Pack and other disabled residents based on their disability, treats them differently based on their disability and fails to accommodate the reasonable requests for accommodations each make based on their disabilities. The Association and the President have a history of harassing and bullying persons with disabilities including without limitation persons with Autism.

## COUNT I – FAILURE TO ACCOMMODATE
## Violations of 42 U.S.C. §3604(f)(1)-(3); 24 C.F.R. §100.50(b)(2)(3); 100.70(b); 100.70(d); 100.80(b); 100.7
### (Plaintiff against the Association and the President)

37. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as though fully set forth herein.

38. Mr. Pack is a disabled individual as a result of his Parkinson's disease and spinal stenosis. Mr. Pack's disability is and has been known, obvious and readily apparent to the Association Defendants. Mr. Pack has been regarded and continues to be regard as disabled and has a record history of disability.

39. Mr. Pack has made multiple requests to access the Association's pool based on

15

his disability related need to use the pool. Mr. Pack only requests a pool key.

40. To date, the Association has not approved Mr. Pack's request for a pool key and instead only offered unrequested, costly alternatives to retrofit the Association pool and make Mr. Pack pay for the modifications to use the Association pool.

41. As a direct and proximate result of the Association Defendants' discriminatory actions, Mr. Pack suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger, travel expenses, frustration, loss of use and enjoyment of the Association's pool and loss of dignity.

42. The Association Defendants' discriminatory conduct was deliberately indifferent, intentional, willful and/or taken in reckless disregard of the rights of Mr. Pack's rights under the FHAA. Mr. Pack is entitled to punitive damages to punish and deter the Association Defendants' reckless disregard of their rights under the FHAA. During the time the Association Defendants' failed and continue to fail to accommodate Mr. Pack, the Association Defendants had knowledge that disability laws require them to grant the requested accommodation on the basis of disability yet still continued to violate the FHA by failing to grant his accommodations request.

43. The Association is directly and vicariously liable for such actions and the actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

44. Mr. Pack is entitled to declaratory relief stating that the Association Defendants discriminatory actions violated the FHAA and a statutory injunction requiring the Association to approve his accommodation's request by providing Mr. Pack with a pool key.

45. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. § 3613 of the FHAA.

**COUNT II**

## DISCRIMINATION IN PRIVILEGES, TERMS, CONDITIONS OF SALE
## Violations of 42 U.S.C. §3604(f)(2); 24 C.F.R. §§100.50(b) and (b)(2), 100.65(b) and (b)(4),(6),(7); 100.70(b); 100.7
## (Plaintiff against the Association and the President)

46. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as though fully set forth herein.

47. Mr. Pack is a disabled individual as a result of his Parkinson's disease and spinal stenosis. Mr. Pack's disability is and has been known, obvious and readily apparent to Association Defendants. Mr. Pack has been regarded and continues to be regard as disabled and has a record history of disability.

48. Association Defendants treat Mr. Pack differently than non-disabled residents. Among other things, Association Defendants through their directors including the President have treated Mr. Pack differently by:

   a. Denying Mr. Pack access to the Association's pool when the Association provides access and copies of pool keys to non-disabled members and residents;

   b. Requiring Mr. Pack to seek Association approval and go through various written requests and meetings to have access to the Association's pool and a copy of the pool key even though non-disabled members and residents are not required to seek such Association approval or go through such process;

   c. Requesting Mr. Pack use a Medicare bus to go to a non-Association owned pool used by disabled persons even though non-disabled persons are similarly not requested and required to use the non-Association owned pool rather than the Association's pool;

   d. Falsely threatening him with service of process at 9:00 p.m. at night when no lawsuit was filed and when the Association and its President are not licensed process servers; and

17

  e. Imposing unrequested accommodations that will financially burden Mr. Pack to use the Association pool when the Association does not impose unrequested accommodations on non-disabled persons when they use the Association's pool.

49. Having treated Mr. Pack differently on the basis of disability, the Association Defendants violated and continue to violate 42 U.S.C. §3604(f)(2) and the implementing regulations of the Fair Housing Act when they:

  a. imposed different terms, conditions or privileges against Mr. Pack to use and enjoy the unit including common elements of the Condominium;[1] and when they

  b. subjected Mr. Pack to harassment because of his disability that had the effect of imposing different terms, conditions or privileges related to his use of the common elements at the Association including the Association's pool.[2]

50. As a direct and proximate result of the Association Defendants' discriminatory actions, Mr. Pack suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger, travel expenses, frustration, loss of use and enjoyment of the Association's pool and Condominium and loss of dignity.

51. The Association Defendants' discriminatory conduct was deliberately indifferent, intentional, willful or taken in reckless disregard of the rights of Mr. Pack as a disabled person.  Mr. Pack is entitled to punitive damages to punish and deter the Association Defendants' reckless disregard of Mr. Pack's rights under the FHAA.  During the time the Association Defendants' treated Mr. Pack differently on the basis of his disability, the Association Defendants had knowledge that disability laws require prohibited them from treating Mr. Pack differently on the basis of disability yet still continued to do this in violation of the FHAA.

---

[1] 42 U.S.C. §3604(f)(2) and 24 C.F.R. §100.70(b)
[2] 42 U.S.C. §3604(f)(2) and 24 C.F.R. §100.65

52. The Association is directly and vicariously liable for such actions and the actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

53. Mr. Pack is entitled to declaratory relief stating that the Association Defendants discriminatory actions violated the FHAA and for a statutory injunction to enjoin the Association Defendants from violating the FHAA.

54. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. § 3613 of the FHAA.

## COUNT III

## RETALIATION AND HOSTILE ENVIRONMENT HARASSMENT

## Violations of 42 U.S.C. §3617; 24 C.F.R. §§100.400, 100.600; 100.7

## (Plaintiff against Association and President)

55. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as though fully set forth herein.

56. Mr. Pack is a disabled individual as a result of his Parkinson's disease and spinal stenosis. Mr. Pack's disability is and has been known, obvious and readily apparent to Defendants. Mr. Pack has been regarded and continues to be regard as disabled and has a record history of disability.

57. The Association Defendants violated the retaliation and hostile environment harassment provisions of the FHAA by:

    a. Ignoring his initial request for modifications based on disability;
    b. Ignoring his request for a pool key;
    c. Suspending him from using the pool even though the Association knew it has no such right under its governing documents;
    d. Threatening, intimidating, harassing and bullying Mr. Pack with suit for arbitration if he used the pool;

e. Threatening to collect attorneys' fees and costs from him if he used the pool even though the Association knew it had no such rights under its governing documents;

f. Threatening to impose unrequested, financially burdensome ADA modification requirements as the only offered accommodation to use the Association pool;

g. Falsely threatening him with service of process at 9:00 p.m. at night when no lawsuit was filed and when the Association and its President are not licensed process servers;

h. Falsely requiring Mr. Pack to go through an approval and verification process to use the Association's pool and receive a pool key when non-disabled persons are not required to do this;

i. Requesting Mr. Pack take to the Medicare bus to use a pool used by disabled persons located outside of the Condominium;

j. Failing to keep confidential Mr. Pack's disability and disability related need for an accommodation as required by the FHAA;

k. Using policies, practices, and procedures to discourage, delay, obstruct and refuse the provision of reasonable accommodations requested on the basis of disability; and

l. Continuing such practices even after the Association and its President have been sued for disability discrimination.

58. As a direct and proximate result of the Association Defendants' discriminatory actions, Mr. Pack suffered damages including emotional distress, mental anguish, embarrassment, humiliation, anger travel expenses, frustration, loss of use and enjoyment of the Association's pool and loss of dignity.

59. The Association Defendants' discriminatory conduct was deliberately indifferent, intentional, willful or taken in reckless disregard of the rights of Mr. Pack as a disabled person.  Mr. Pack is entitled to punitive damages to punish and deter the

Association Defendants' reckless disregard of Mr. Pack's rights under the FHAA. During the time the Association Defendants' harassed Mr. Pack on the basis of his disability, the Association Defendants had knowledge that disability laws prohibit such retaliation and harassment yet still continued to do this in violation of the FHAA and made no efforts to stop it.

60. The Association Defendants conduct constitutes coercion, harassment, intimidation, threats or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, the rights granted or protected by the FHAA in violation of Section 42 U.S.C. § 3617

61. The Association is directly and vicariously liable for such actions and the actions of its President and Board Members who acted on behalf of the Association in the scope of their duties as directors or officers and with apparent authority of the Association.

62. Plaintiff is entitled to declaratory relief stating that the Association Defendants discriminatory actions violated the FHAA and for a statutory injunction enjoining violations of the FHAA.

63. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 42 U.S.C. §3613 of the FHAA.

**COUNT IV**

**FAIR DEBT COLLECTIONS PRACTICES ACT**

**Violations of 15 U.S.C. §1692**

**(Plaintiff against the Attorney)**

64. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as though fully set forth herein.

65. Mr. Pack is the co-owner of unit 9B and 9C at the Condominium since 2008. He is a member of the Association, and has been a permanent resident at the

Condominium since in or about June 2014

66. The Law Office of Joseph Pustizzi, P.A. ("Attorney") is the attorney who collects consumer debts, directly and indirectly, for the Association including enforcement of suspensions against owners who failed to pay alleged monetary obligations to the Association.

67. On or about March 3, 2019, the Attorney violated the FDCPA when he used false, deceptive, or misleading representations or means in connection with the collection or attempt to collect a debt by:

   a. enforcing an alleged suspension of Mr. Pack's right to use the Association's pool due to an alleged nonpayment of an monetary obligation when the governing documents and Condominium Act did not permit such suspension and did not allow it to be legally taken;

   b. threatening to file for arbitration and collect reasonable attorneys' fees and costs for the arbitration for allegedly using the Association pool in violation of an alleged nonpayment of a monetary obligation when arbitration did not apply and did not allow any suspension to be legally taken or enforced;

   c. falsely representing or implicating the above to Mr. Pack when such representations and implication regarding enforcement and arbitration were not true and that he knew were not true; and

   d. failing to disclose in the initial written communication concerning the suspension with Mr. Pack and that the Attorney is attempting to collect a debt and that any information obtained will be used for that purpose, and further failing to disclose in such communications that the communication was from a debt collector.

68. At the time the Attorney sent the notice dated March 3, 2019, the Attorney knew the governing documents contained no provisions authorizing the Association to suspend Mr. Pack's right to use the Association pool and no provisions authorizing it to file arbitration, to enforce its suspension and to demand attorneys' fees and costs against Mr. Pack relating to any enforcement of the suspension.

69. At the time the Attorney sent the notice dated March 3, 2019, the Attorney also knew that the governing documents contained no provisions incorporating subsequent amendments to the Condominium Act as it is amended from time to time to give the Association suspension subsequently created by the Condominium Act.

70. At the time the Attorney sent the notice dated March 3, 2019, the Attorney also knew that a Fair Housing Act request for accommodations had been made and that retaliating against Mr. Pack was prohibited under the Fair Housing Act.

71. As a direct and proximate result of the Attorney's violation of the FDCPA, Mr. Pack suffered damages including emotional distress, mental anguish, embarrassment, humiliation, frustration, and loss of use and enjoyment of the Association's pool.

72. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to 15 U.S.C. §1692 (k) of the FDCPA.

## COUNT V

## FLORIDA CONSUMER COLLECTIONS PRACTICES ACT

### Violations of Florida Statute Section 559.72

**(Plaintiff against the Attorney)**

73. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-37 above as though fully set forth herein.

74. Mr. Pack is the co-owner of unit 9B and 9C at the Condominium since 2008. He is a member of the Association, and has been a permanent resident at the Condominium since in or about June 2014.

23

75. The Law Office of Joseph Pustizzi, P.A. ("Attorney") is the attorney who collects consumer debts, directly and indirectly, for the Association including enforcement of suspensions against owners who failed to pay alleged monetary obligations to the Association.

76. On or about March 3, 2019, the Association and the Attorney violated the FCCPA asserted the existence of a legal right to suspend Mr. Pack's use of the Association pool when the Attorney that the right does not exist.  The Attorney did this by:

   a. enforcing an alleged suspension of Mr. Pack's right to use the Association's pool due to an alleged nonpayment of an monetary obligation when the governing documents and Condominium Act did not permit such suspension and did not allow it to be legally taken;

   b. threatening to file for arbitration and collect reasonable attorneys' fees and costs for the arbitration for allegedly using the Association pool in violation of an alleged nonpayment of a monetary obligation when arbitration did not apply and did not allow any suspension to be legally taken or enforced; and

   c. falsely representing or implicating the above to Mr. Pack when such representations and implication regarding enforcement and arbitration were not true and that he knew were not true.

77. At the time the Attorney sent the notice dated March 3, 2019, the Attorney knew the governing documents contained no provisions authorizing the Association to suspend Mr. Pack's right to use the Association pool and no provisions authorizing it to file arbitration, to enforce its suspension and to demand attorneys' fees and costs against Mr. Pack relating to any enforcement of the suspension.

78. At the time the Attorney sent the notice dated March 3, 2019, the Attorney also knew that the governing documents contained no provisions incorporating subsequent

amendments to the Condominium Act as it is amended from time to time to give the Association suspension subsequently created by the Condominium Act.

79. At the time the Attorney sent the notice dated March 3, 2019, the Association Attorney also knew that a Fair Housing Act request for accommodations had been made and that retaliating against Mr. Pack was prohibited under the Fair Housing Act.

80. As a direct and proximate result of the Attorney's violation of the FCCPA, Mr. Pack suffered damages including emotional distress, mental anguish, embarrassment, humiliation, frustration, and loss of use and enjoyment of the Association's pool.

81. Plaintiff is entitled to an award of attorneys' fees, costs and disbursements pursuant to Florida Statute Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Manuel Pack, respectfully requests that this Court enter Judgment in her favor and against Defendants, Magdalene Ivanovski and Golden Horn Condominium Association, Inc., jointly and severally, on counts I-III as follows:

A. Declare that the actions of the Association Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities respectively as alleged above;

B. Preliminarily enjoin the Association Defendants from imposing any unrequested ADA modifications for use of the pool and to require Defendants to immediately provide access to the pool by providing Mr. Pack with a pool key;

C. Preliminarily enjoin the Association Defendants from harassing, bullying and retaliating against Mr. Pack as stated above;

D. Permanently enjoin the Association Defendants' violation of the FHAA by requiring Defendants to approve Mr. Pack's accommodations request to use the pool by providing him with a pool key;

E.  Permanently enjoin the Association Defendants from harassing, bullying and retaliating against Mr. Pack;

F.  Require as appropriate, affirmative relief that the Association adopt anti-discriminations policies, practices and procedures to handle accommodations requests based on disability and to not retaliate or harass individuals with disabilities at the Condominium;

G.  Require the Association Defendants including its president and directors undergo disability discrimination training as appropriate, affirmative relief;

H.  Award Plaintiff actual, special, nominal and punitive damages, court costs and Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. §3613; and

I.  Award such other and further relief this Court deems just and proper.

Against Defendant, Law Office of Joseph Pustizzi, P.A., on Count IV as follows,

J.  Award Plaintiff actual, special, additional statutory and punitive damages, court costs and Plaintiff's reasonable attorneys' fees and costs under 15 U.S.C. §1692(k);

K.  Award Plaintiff actual, special, additional statutory and punitive damages, court costs and Plaintiff's reasonable attorneys' fees and costs under Florida Statute Section 559.77; and

L.  Award such other and further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable in accordance with Rule 38 of the Federal Civil Rules of Procedure.

DATED:  January 29, 2020                           Respectfully submitted,

                                                              Glazer & Sachs, P.A.
                                                              3113 Stirling Rd., Suite 201
                                                              Fort Lauderdale, Florida 33312
                                                              T: (954) 983-1112

                                                              By: /s/Paul Kim

                                                              Paul Kim
                                                              Florida Bar No. 37111
                                                              paul@condo-laws.com

                                                              *Attorneys for Plaintiff*